## Case No. 10,551.

### ORDT v. OCEAN STEAM NAV. CO.

[N. Y. Times, Feb. 1, 1855.]

District Court, D. Connecticut. Jan. 30, 1855.

#### CARRIERS—DAMAGE TO CARGO.

[Ribbons on spools, in pasteboard boxes covered with wrapping paper, packed in cases made of pine wrapped around with straw and covered with linen wrappers, were shipped fresh from the factory on the berth deck of respondent's steamer and carefully guarded from heat and steam. When the ribbons were delivered the boxes and wrappings of all sorts were in perfect condition, but the ribbons were badly discolored. *Held*, that the damages must have been caused by their being damp when packed, and respondent was not liable.]

[This was a libel by Clement A. Auffin Ordt and others against the Ocean Steam Navigation Company for failure to deliver goods under the terms and conditions of a bill of lading.]

On the 23d of May, 1853, the duly-authorized agent of the Ocean Steam Navigation Company at Havre signed a bill of lading for 10 cases of ribbons, which the respondents had received from Messrs. Dose & Kopetadt. By the bill of lading they acknowledged the receipt of the goods in good order and well-conditioned, to be forwarded from Havre to Southampton by the Southwestern Steam Navigation Company's steamer Nord, and there transhipped on board the respondents' steamer Washington, to be carried to New York, and there delivered to the libelants in like good order and condition, the acts of God, enemies, pirates, restraints of princes and rulers, fire at sea and on shore, accidents from machinery, boilers, steam, or any other accidents of the seas, rivers, and steam navigation, of whatsoever nature or kind, excepted. The goods were carried to Southampton and placed on board the Washington, which arrived in New York in the first part of June, having had a quick and pleasant passage, with no rough weather, and without any accident to the steamer or her machinery. But on the delivery of the cases here it was found that some of the ribbons in three of them had been damaged, and the libel is filed to recover the loss occasioned thereby, which is stated at about $780.

The ribbons were fresh from the manufactory and came from different establishments. Each piece was rolled on a block in the usual way, and all were packed in boxes about 12 inches by 6, and about 3 inches high, from 12 to 15 rolls being packed in each box. The boxes were made of white pasteboard, some of them glazed. Common wrapping paper was put around each box, and about 50 boxes were placed in each case. The cases were made of French pine, and wrapped round with straw, over which was a linen wrapper. They were placed in a dry part of the steamer, on the orlop or berth deck, a place appropriated for French goods, which was separated from the boiler, furnace and engine by a thick partition of boiler iron, and every precaution which prudence could dictate was taken by the respondents to exclude heat and the escape of steam from those decks. The ribbons were of various colors, the more delicate colors being in these three cases. The damage complained of was manifested in a change in their color, in streaks and in spots, the less delicate colors not being injured. The milk-white was changed to a dull yellowish tinge, and where this change of color appeared, it extended over the whole piece, from the outside to the block. There was no appearance of damage on the wrappers of the cases, or on the cases, or on the wrappers of the boxes, or on the boxes, and no appearance that they had been wet or damp.

W. A. Butler, for libelants.

Martin, Strong & Smith, for respondents.

HELD BY THE COURT (INGERSOLL, District Judge). That, under the bill of lading, the respondents must be responsible for the damage, unless they show that it was occasioned by one of the excepted causes in the bill of lading, or that it existed before the ribbons came into their possession, or that it was produced by a cause which had its origin before they received them at Havre. That upon the evidence the damage was not occasioned by heat merely. Damage occasioned by heat shows itself in a different way. To occasion it, the heat must be excessive, and there was no such excessive heat where these ribbons were stowed. That it was not occasioned by the escape of steam after they were packed in the boxes. If it had been, some trace of damage would have been shown by the paper around the boxes. No such trace was found. Steam could not penetrate to these decks, except in case of an accident to the machinery, and no such accident happened. That there can be no doubt that the original cause of the damage was dampness, the damage being made to manifest itself as it did by heat. That if this dampness had been occasioned by water reaching the ribbons after they were placed in the boxes, some evidence of it would have appeared on the boxes, wrappers and cases. But none such could be found. There is no probability that water could have reached them where they were stowed, under the circumstances. That the ribbons

must therefore have been damp when rolled, or must have become so after they were rolled but before they were packed, and therefore before they came into the possession of the respondents. That though this damage would have manifested itself differently if the ribbons had been brought in a sailing vessel, and though the peculiar manner of manifestation of the damage was caused by the warmth and dryness of the steamer, yet the dampness was the cause of the damage to the ribbons, and for that the respondents are not liable.

Libel dismissed with costs.